IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CINDY CURTIS,                    )
                                 )
                Plaintiff,       )
                                 )       No. 11 C 2448
        vs.                      )
                                 )       Jeffrey T. Gilbert
HARTFORD LIFE AND ACCIDENT       )       Magistrate Judge
INSURANCE COMPANY,               )
                                 )
                Defendant.       )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cindy Curtis seeks to recover long-term disability benefits under an employee welfare benefits plan pursuant to Section 502(a)(1)(B) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff worked at Children's Memorial Hospital and was a participant in its Long-Term Disability Benefits Plan (the "Plan"), which is administered by defendant Hartford Life and Accident Insurance Company. Pl's Compl. [Dkt.#1], at ¶¶3-9. Plaintiff became disabled and stopped working on January 30, 2007, exhausted her short-term disability benefits, and applied for long-term disability benefits under the Plan. Pl's Compl. [Dkt.#1], at ¶¶16,17. Hartford approved plaintiff's application and began paying disability benefits on August 6, 2007. Pl's Compl. [Dkt.#1], at ¶18. On August 5, 2009, Hartford determined that plaintiff no longer was eligible for long-term disability benefits under its Plan and ultimately terminated her disability benefits on April 2, 2010. Pl's Compl. [Dkt.#1], at ¶19. Plaintiff filed this lawsuit to recover her benefits on December 9, 2010.

## PROCEDURAL POSTURE OF THE CASE

This matter is before the Court to determine the standard of review applicable to Hartford's decision to terminate plaintiff's disability benefits. The parties ask the Court to make this determination now because the applicable standard of review is relevant to the nature and scope of discovery they can take in accordance with Rule 26(b)(1) of the Federal Rules of Civil Procedure. Such a ruling is within the scope of the District Judge's referral to this Magistrate Judge "for the purpose of holding proceedings related to: discovery motion(s), discovery supervision and settlement conference." [Dkt.#39].

Plaintiff argues that Hartford's decision to cut-off her benefits is subject to *de novo* review under ERISA and, consequently, that she is entitled to take wide-ranging discovery concerning the reasonableness of Hartford's decision to stop paying her benefits. Hartford contends, on the other hand, that its decision is subject to review under the more limited arbitrary and capricious standard so that plaintiff only is entitled to narrow discovery concerning Hartford's decision.

The starting point for any analysis of the applicable standard of review for a plan administrator's decision to terminate an individual's long-term benefits is ERISA. Under ERISA, the nature and scope of judicial review of a decision to terminate benefits depends, in the first instance, on whether an employer's long-term benefits plan grants the plan administrator discretionary authority to make decisions. Judicial review of a plan administrator's determination regarding an individual's eligibility for benefits is *de novo* unless the plan grants discretionary authority to the administrator. *Marszalek v.*

*Marszalek & Marszalek Plan*, 485 F. Supp. 2d 935, 936-37 (N.D. Ill. 2007) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  When a qualifying plan under ERISA gives the administrator discretionary authority to determine a claimant's eligibility for benefits, the court then reviews the administrator's decision to deny benefits under the arbitrary and capricious standard.  *Hackett v. Xerox Corp.*, 315 F.3d 771, 773 (7th Cir. 2003).

To determine whether a plan administrator has discretionary authority, the court looks to the plain language of the plan. *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).  In this case, it is not disputed that the Children's Memorial Hospital Long-Term Disability Benefits Plan contains a provision that gives Hartford discretionary authority to determine a claimant's eligibility for long-term disability benefits.  The Plan specifically provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." Hartford's Reply [Dkt.#48-1], Ex.4 at 35.  Typically, this alone ends the inquiry, and the Court would review Hartford's denial of benefits under the arbitrary and capricious standard.  *Hackett*, 315 F.3d at 773.

Plaintiff, however, has challenged that conclusion, asserting that the Plan's discretionary clause is invalid in light of a regulation promulgated by the Illinois Department of Insurance in July 2005 (the "Illinois Regulation") which bans discretionary clauses in insurance contracts offered or issued in Illinois.  Specifically, the Illinois Regulation provides:

> No policy, contract, certificate, endorsement, rider application
> or agreement offered or issued in this State, by a health
> carrier, to provide, deliver, arrange for, pay for or reimburse
> any of the costs of health care services or of a disability may
> contain a provision purporting to reserve discretion to the
> health carrier to interpret the terms of the contract, or to
> provide standards of interpretation or review that are
> inconsistent with the laws of this State.

50 Ill. Admin. Code § 2001.3 (2010); 29 Ill. Reg. 10172.  Courts have recognized that "[t]he express purpose of Section 2001.3 in prohibiting discretionary clauses was to ensure that courts would apply *de novo* review in ERISA cases when the denial of benefits is challenged." *Garvey v. Piper Rudnick LLP Long Term Disability Insurance Plan*, 2011 WL 1103834, at * 2 (N.D. Ill. March 25, 2011) (citing 29 Ill. Reg.10172 ("The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard.")).

The Illinois Regulation, plaintiff argues, bars Hartford from relying on the discretionary clause contained in the Plan and mandates that Hartford's decision to terminate her benefits is subject to *de novo* review.  Hartford disagrees and argues that the Illinois Regulation is inapplicable and that its decision to terminate plaintiff's disability benefits is to be reviewed under the arbitrary and capricious standard.  If Hartford's decision is subject to *de novo* review, then more leeway will be permitted in discovery

into the reasonableness of Hartford's decision than if its decision is to be reviewed under the more narrow arbitrary and capricious standard.

## FACTUAL BACKGROUND

Hartford issued Group Policy No. GLT-674774 to Children's Memorial Hospital as the policy holder on January 1, 2004 (the "January 2004 Policy"). [Dkt.#47-1], Ex. A at 1. That policy states on its face that it was delivered to Children's Memorial Hospital in Illinois. *Id.* The January 2004 Policy was amended on April 19, 2006 (the "April 2006 Amended Policy"). *Id.* The April 2006 Amended Policy again was issued to Children's Memorial Hospital as the policy holder, and it says it was delivered in Illinois. *Id.*

In September 2008, Children's Memorial Hospital subscribed to the Healthcare Benefits Alliance Group Insurance Trust (the "Trust") by signing a subscription agreement pursuant to which it became a Participating Member in the Trust.[1] [Dkt.#48-1], Ex. 1. On September 2, 2008, Hartford issued Group Policy No. GLT-674774 to the Trust as the policy holder (the "September 2008 Policy"). *Id.* at ¶¶ 6, 7. That policy identified Children's Memorial Hospital as the Participating Employer and states on its face that it was delivered to the Trust in Delaware. *Id.*

---

[1] Blake Welch, who is a Regional Manager for Hartford Group Benefits and works on the account for Children's Memorial Hospital, attests that there are more than 600 hospitals and hospital systems and other health care facilities that currently subscribe to and are Participating Members in the Trust. [Dkt.#62], at ¶ 2. Children's Memorial Hospital is a member of CHCA, which is a Group Purchasing Organization through which CHCA hospitals purchase services and insurance at reduced cost. [Dkt.#57], at ¶3. Welch identifies 32 hospitals as members of CHCA, and he states that those CHCA hospitals subscribed to the Trust in 2008 and 2009. [Dkt.#62], at ¶ 3.

The September 2008 Policy was amended on February 16, 2010 (the "February 2010 Amended Policy" or the "Policy"), and any changes between the September 2008 Policy and the February 2010 Amended Policy became effective April 1, 2009. [Dkt.#48-1], Ex. 3 at 1. The February 2010 Amended Policy is the policy that was in effect when Hartford terminated plaintiff's disability benefits on April 2, 2010. Hartford Reply Br. [Dkt.#48], at 2-3; Hartford's Rebutter Br. [Dkt.#52], at 2. There is no dispute that Children's Memorial Hospital's Long-Term Disability Benefits Plan at all relevant times contained a provision that granted Hartford the discretionary authority to determine a claimant's eligibility for long-term disability benefits. [Dkt.#48-1], Ex. 2 at 36; Ex. 4 at 35.

## DISCUSSION[2]

As a threshold matter, the Court notes that the parties' arguments and issues presented for decision changed as the briefing developed in this case. Initially, Hartford submitted to the Court the April 2006 Amended Policy, which was issued to Children's Memorial Hospital as the policy holder and delivered in Illinois, and represented that was the relevant policy. Hartford argued that the April 2006 Amended Policy, which on the

---

[2] The parties submitted extensive briefing on the issues for decision, and the Court conducted two substantive oral arguments at which each party was given ample opportunity to argue its position, respond to arguments asserted by the other side and submit additional materials, some of which were requested by the Court. At the end of the second oral argument, both parties acknowledged that the Court had sufficient information to make its decision, and neither party wanted to pursue discovery on the preliminary issue of the standard of review for Hartford's decision concerning plaintiff's benefits or submit any other information relating to that issue for the Court's consideration. [Dkt.#64],10/31/11 Oral Argument Tr. at 37-39.

face of the Policy says it has an effective date of January 1, 2004, was issued before the

Illinois Regulation was enacted in July 2005 and that the Illinois Regulation did not apply

retroactively. Hartford Opening Br. [Dkt.#45], at 6-9. In addition, Hartford also argued

that ERISA preempted the application of the Illinois Regulation. *Id.* at 10-15. In

response, plaintiff argued, among other things, that the April 2006 Amended Policy was a

policy that had been renewed after the Illinois Regulation was enacted and that the Illinois

Regulation therefore did, in fact, apply to that policy and that the Regulation was not

preempted by ERISA. Pl's Resp. Br. [Dkt.#47], at 5-12.

In reply, Hartford changed its position and produced with its reply brief a new

policy – the February 2010 Amended Policy. Hartford asserted that was the controlling

policy in effect when Hartford stopped paying plaintiff's long-term disability benefits.

Hartford Reply Br. [Dkt.#48], at 2-3; Hartford's Rebutter Br. [Dkt.#52], at 2 (stating that

"the controlling version of the policy is the one in effect when the claims administrator

finally decided [plaintiff's] claim (*i.e.*, on April 2, 2010)"). On these new facts, Hartford

argued that the Illinois Regulation did not apply because the February 2010 Amended

Policy was issued to the Trust and delivered in Delaware, and therefore, the Policy was

not "offered or issued" to Children's Memorial Hospital in Illinois within the meaning of

the Illinois Regulation.[3] Hartford Reply Br. [Dkt.#48], at 4 (asserting that "[t]he

_____

[3] Plaintiff argues that Hartford waived its right to rely on the February 2010 Amended
Policy when it identified and produced that new policy with its reply brief. Pl's Sur-Reply Br.
[Dkt.#51], at 1. The Court disagrees and finds that plaintiff's waiver argument is not
meritorious. The Court's analysis and decision concerning the appropriate standard of review is
inextricably tied to the insurance policy that was in effect when the termination decision was

controlling policy here was not offered or issued in Illinois"). Plaintiff disagreed and argued that the Policy was offered or issued in Illinois and that the Illinois Regulation applied even though the Policy named the Trust as the policy holder and states on its face that it was delivered in Delaware. Pl's Sur-Reply Br. [Dkt.#51], at 2-4.

In its rebutter brief, Hartford seems to assert that it has not abandoned its initial argument that the Illinois Regulation does not apply retroactively because the February 2010 Amended Policy at issue in this case still says on the face of the Policy that its "effective date" is January 1, 2004, which is prior to the enactment of the Regulation in July 2005. Hartford's Rebutter Br. [Dkt.#52], at 2-3. The thrust of Hartford's argument in its rebutter brief, however, and its position at the two hearings conducted in this matter is that the Illinois Regulation does not apply because the February 2010 Amended Policy was issued to the Trust and delivered in Delaware so it was not "offered or issued" in Illinois. To the extent that Hartford still maintains that the Illinois Regulation does not apply in this case because the effective date stated on the face of the Policy is January 1, 2004, the Court rejects that argument. It incorrectly presumes the Illinois Regulation

_____

made. Although it would have been preferable for Hartford to have identified the correct policy when it submitted its initial brief, plaintiff has not been prejudiced by Hartford's identification of that policy in its reply brief, and she has been given ample opportunity to respond to Hartford's new arguments with reference to that policy. In addition, plaintiff filed a Motion to Strike Exhibit A to Hartford Rebutter Brief [Dkt.#54]. Exhibit A was an unverified list of children's hospitals that subscribed to the Trust. That motion is denied. Hartford submitted additional information after plaintiff filed that Motion, specifically a third affidavit by Blake Welch [Dkt.#57], that clarified and verified the information included in Exhibit A to Hartford's Rebutter Brief. The Court has considered all of the documents, arguments and information submitted by both parties.

would have to be applied retroactively in order to be applicable here. That, however, is not the case.

Group Policy No. GLT-674774 was amended in April 2006, almost a year after the Illinois Regulation went into effect. Thereafter, in September 2008, Children's Memorial Hospital subscribed to the Trust, and Hartford issued Group Policy No. GLT-674774 to the Trust in the form of the September 2008 Policy. That Policy identified Children's Memorial Hospital as the Participating Employer and states it was delivered to the Trust, as the named policy holder, in Delaware. The September 2008 Policy subsequently was amended by the February 2010 Amended Policy, and then Hartford terminated plaintiff's long-term disability benefits on April 2, 2010, almost four years after the Illinois Regulation was enacted.

The gravamen of Hartford's argument after it produced the February 2010 Amended Policy is that the February 2010 Amended Policy is a new policy, and the controlling policy as discussed above, to which the Illinois Regulation does not apply because that Policy was issued to the Trust, not Children's Memorial Hospital, and it was delivered in Delaware, not Illinois. Although earlier iterations of Group Policy GLT-674774 had been issued to Children's Memorial Hospital as the named policy holder and delivered in Illinois (*i.e.*, the January 2004 Policy and the April 2006 Amended Policy), the September 2008 Policy and the February 2010 Amended Policy are new policies in that they name a different policy holder and were delivered in another state. *See Golden v. Guardian Life Ins. Co.*, 2010 WL 2293390, at *7 (N.D. Ill. June 1, 2010) ("Generally,

in Illinois, the renewal of an insurance policy is perceived to be a new contract, particularly where 'material and significant differences' in the two policies exist.") (citing *Am. Auto Guardian Inc. v. Acuity Mut. Ins. Co.,* 548 F. Supp. 2d 626, 628 (N.D. Ill. 2008)). These are significant changes, and the Court cannot ignore them simply because the Policy still states its effective date is January 1, 2004.

Accordingly, the questions presented for decision are: (1) whether the February 2010 Amended Policy is a policy, contract or agreement that was offered or issued in Illinois by a health carrier to pay for healthcare services or disability benefits within the meaning of the Illinois Regulation and, if it is, then (2) whether the Illinois Regulation is displaced by the Delaware choice of law provision in the February 2010 Amended Policy, and (3) whether the Illinois Regulation is preempted by ERISA.

### A. The February 2010 Amended Policy Was Offered To Children's Memorial Hospital In Illinois By Hartford

In determining whether the Illinois Regulation applies to the February 2010 Amended Policy, the Court first looks to the Policy itself. By the terms of the February 2010 Amended Policy, Hartford provides insurance coverage for employees of Children's Memorial Hospital, the Participating Employer named in the Policy, in Illinois. [Dkt.#48-1], Ex. 3 at 6. Children's Memorial Hospital pays the premiums for that coverage. [Dkt.#48-1], Ex. 3 at 6; [Dkt.#62], Ex. E at § 2.01. Hartford is entitled to inspect the Hospital's records at any reasonable time. *Id.* Children's Memorial Hospital is required to provide to Hartford all information relevant to the administration of the policy. *Id.*

In addition, the Certificate of Insurance for the February 2010 Amended Policy states on its face: "We [Hartford] have issued the Policy to the Participating Employer [Children's Memorial Hospital]." [Dkt.#48-1], Ex. 4 at 9. Hartford says this is a typographical error because the Policy clearly says it was issued to the Trust. Whether this was a typographical error or a Freudian slip of the tongue, it accurately describes the situation, as a practical matter, in the Court's view. But whether the Policy was formally "issued" to Children's Memorial Hospital as the named policy holder or only "offered" to Children's Memorial Hospital in Illinois by Hartford as a Participating Member in the Trust and as the Participating Employer under the Policy, the result is the same under Illinois law.

The insertion of the Trust as the named policy holder in 2008 did not change the fundamental nature or mechanics of the relationship between Children's Memorial Hospital and Hartford as far as the Illinois Regulation is concerned. As a result of becoming a Participating Member in the Trust, Children's Memorial Hospital "agree[d] to be bound by the terms of the Amended and Restated Trust Agreement." [Dkt.#48-1], at ¶¶ 2, 3, 4; Ex 1 at 1. The Trust Agreement states that, at the direction of its Participating Members, the Trust purchases insurance to provide long-term disability benefits for those Participating Members. *Id.* at ¶5; [Dkt.#62], Ex. E at § 3.01.

The Trust is essentially a passive, pass-through entity that was created for the purpose of facilitating the provision of insurance benefits to eligible employees of those employers who elect to become Participating Members in the Trust. [Dkt.#62], Ex. E at

1.  Children's Memorial Hospital is one of those Participating Members.  [Dkt.#48-1], Ex. 3 at 6.  Under the terms of the Trust Agreement, "[t]itle to the Insurance Program shall be vested exclusively with the Participating Members in the Trust." [Dkt.#62], Ex. E at § 2.04.  The Insurance Program is defined in the Trust Agreement as "the group insurance policy or policies issued to the Trust." [Dkt.#62], Ex. E at § 2.01. Therefore, title to the February 2010 Amended Policy issued to the Trust legally is vested in Children's Memorial Hospital as a Participating Member in the Trust.[4]

As a Participating Member in the Trust, Children's Memorial Hospital has exclusive authority to direct the Trustee concerning all decisions relating to the purchase of any insurance coverage for its employees.  [Dkt.#62], Ex. E at § 3.01.  Specifically, the Trustee only may act "with the advice and consent and upon the direction of the Participating Member" to obtain any insurance coverage for the Participating Member. *Id.* at § 3.01.  The Trustee has "no responsibility for any determination that any person shall or shall not be eligible for coverage under [any] group insurance policy or policies."  *Id.* at § 3.023.  In addition, the Trust Agreement says that Hartford retains sole discretion to decide whether to accept or reject a request from a Participating Member such as Children's Memorial Hospital that the Trust purchase an insurance policy on its behalf. *Id.* at § 4.03.

---

[4]  For clarification, the Trust refers to Children's Memorial Hospital as a Participating Member whereas the February 2010 Amended Policy refers to Children's Memorial Hospital as a Participating Employer. Hartford does not dispute that there is any distinction between a Participating Member and a Participating Employer and we see none.  [Dkt.#64], 10/31/11 Oral Argument Tr. at 4.

Further, the Trust Agreement says that Children's Memorial Hospital, as a Participating Member and signatory to the Trust, is bound to the terms of the insurance policy Hartford issues to the Trust as the named policy holder. [Dkt.#62], Ex. E at § 3.023. Specifically, the Trust Agreement states in Section 3.023 that "[u]pon acceptance of said group insurance policy or policies by Trustee, Trustee shall hold said group insurance policy or policies in accordance with the provisions of this Trust Agreement, and *the terms of said group insurance policy or policies shall be binding upon the parties hereto.*" *Id.* (emphasis added). As a party to the Trust Agreement, the terms of Group Policy No. GLT-674774 in the form of the February 2010 Amended Policy, therefore, are binding upon Children's Memorial Hospital. Accordingly, for all practical purposes, the purchase and issuance of the Policy at issue here continues to be controlled by Children's Memorial Hospital, on the one hand, and Hartford, on the other.

The Court acknowledges that, on its face, the named parties to the February 2010 Amended Policy are the Trust and Hartford, and Children's Memorial Hospital is identified in the Policy as the Participating Employer, not the policy holder. [Dkt.#48-1], Ex. 3 at 1. From these facts, Hartford argues the Illinois Regulation has no application because Children's Memorial Hospital is not a party to the February 2010 Amended Policy that was "issued" by Hartford to the Trust. Moreover, Hartford says the Policy was "offered" to the Trust, not to Children's Memorial Hospital. We disagree.

Hartford argues strictly in terms of the named parties to the February 2010 Amended Policy in a contract law sense. Hartford says that the insurance policy was

offered to the Trust, not Children's Memorial Hospital, and only the Trust could accept that offer.  But that is too narrow a perspective on the facts of this case and ignores the fundamental nature of the relationship between the Trust, Children's Memorial Hospital and Hartford.  The Trust has no power to enter into a contract with Hartford on its own, and it has no authority to accept any policy offered by Hartford without Children's Memorial Hospital directing it to do so.  In other words, the Trust acts solely upon direction from Children's Memorial Hospital.  And it is Children's Memorial Hospital that is the entity insured under the Policy as the Participating Employer, not the Trust. The parties that actually made the contracting decision in this case are Hartford and Children's Memorial Hospital.  From a common sense perspective, the February 2010 Amended Policy – to which Children's Memorial Hospital expressly agreed to be bound by signing the Trust Agreement, for which it pays premiums to Hartford, and that Hartford administers on its behalf and for the benefit of its employees – was "offered" to Children's Memorial Hospital in Illinois by Hartford as a health carrier within the meaning of the Illinois Regulation.  Any other conclusion elevates form over substance.

If the Policy was not offered to Children's Memorial Hospital in a real or practical sense, it could not have intelligently directed the Trust to purchase the Policy in its capacity as a Participating Member in the Trust nor could it have agreed to do the things it agreed to do as the Participating Employer under the Policy.  Moreover, even if Group Policy No. GLT-674774 technically was issued to the Trust in its February 2010 amended iteration, the Trust's role is limited to holding that Policy issued to it for Children's

14

Memorial Hospital as a Participating Member in the Trust. It is Children's Memorial Hospital that ultimately is vested with legal title to and is bound by the terms of the Policy issued to the Trust. All power of direction and acceptance under the Trust is vested in Children's Memorial Hospital as a Participating Member of the Trust and in Hartford as the health carrier that issued to the Trust the Policy that covers Children's Memorial Hospital's employees.

The fact that Hartford did not contract directly with Children's Memorial Hospital with respect to the February 2010 Amended Policy and that Hartford's relationship with Children's Memorial Hospital now runs through the Trust does not render the Illinois Regulation inapplicable by its terms. The Illinois Regulation applies to a policy, contract or agreement "offered . . . in this State by a health carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability." 50 Ill. Admin. Code § 2001.3 (2010). As such, it appears to encompass both direct and indirect arrangements that cover payment for health care services or for disability benefits, including the relationship between Hartford and Children's Memorial Hospital here through the vehicle of the Trust.

Hartford also argues that it issued or offered the February 2010 Amended Policy to the Trust in Delaware, because that is the stated place of delivery for the Policy, and therefore, the February 2010 Amended Policy technically was not issued or offered by a health carrier in Illinois. That argument also elevates form over substance. As discussed above, all power of acceptance and direction with respect to the February 2010 Amended

Policy vests solely with Children's Memorial Hospital in Illinois. It is Children's Memorial Hospital that made the decision to direct the Trust to purchase the February 2010 Amended Policy on its behalf as a Participating Member in the Trust. Children's Memorial Hospital has only one location – in Illinois. Under these circumstances, it is sophistic to say that Hartford offered the February 2010 Amended Policy to anyone other than Children's Memorial Hospital in Illinois based on the statement on the face of the policy that it was "delivered" to the Trust in Delaware.

Hartford has proffered no facts that contradict these common sense conclusions. In fact, it is not inconsistent to say that the Policy was "delivered" to the Trust in Delaware and also "offered" to Children's Memorial Hospital in Illinois within the meaning of the Illinois Regulation. This is not to say the Trust is a sham; it is not. It apparently was created years before Children's Memorial Hospital became a Participating Member for valid business reasons.[5] While the Court does not disregard the existence of the Trust, it also must interpret the Trust provisions as written so as to give effect to the intent of the parties to that document with particular reference to the February 2010 Amended Policy.

---

[5] Prior to Hartford producing any information about the Trust, its formation or the identity of its Participating Members in addition to Children's Memorial Hospital, plaintiff argued that the Trust is a sham. To the extent that plaintiff still is asserting that argument, the Court rejects it. It is clear from the information submitted to the Court that the Trust was created in 1992 and then amended in 2003, and there are over 600 hospitals and hospital systems and other health care facilities that subscribe to the Trust as Participating Members. [Dkt.#62], at ¶2.

The Court, therefore, concludes that on the facts presented the February 2010 Amended Policy is a policy, contract or agreement that was "offered" to Children's Memorial Hospital within the meaning of the Illinois Regulation as the Participating Employer named in that Policy and as a Participating Member subscribing to the Trust. It is a policy, contract or agreement that was offered to Children's Memorial Hospital in Illinois by Hartford, a health carrier, to provide, deliver, arrange for, pay for or reimburse the costs of health care services or disability benefits for Children's Memorial Hospital employees in Illinois. Accordingly, the Illinois Regulation applies, and the Court will review Hartford's decision to terminate plaintiff's disability benefits *de novo* unless the Illinois Regulation is displaced by the Delaware choice of law provision in the February 2010 Amended Policy or preempted by ERISA.

**B.      The Delaware Choice Of Law Provision In The February 2010
         Amended Policy Is Void As Against Illinois Public Policy**

The February 2010 Amended Policy contains a choice of law provision that says it

is to be interpreted under the law of the State in which is was delivered. [Dkt.#48-1], Ex.

3 at 8.  As noted, the Policy states on its face that it was "delivered" in Delaware.  *Id.* at 1.

Because Delaware does not have a regulation like Illinois that invalidates the grant of

discretionary authority to plan administrators, there is a conflict between Delaware and

Illinois law to the extent that we have concluded that the Illinois Regulation applies here.

The Illinois Supreme Court in *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454

(1975), instructed that the choice of law in an insurance policy should be followed only

"so long as the particular statutory provision to be applied does not conflict with the

public policy of this State and so long as the certificate received by the insured does not

contain conflicting provisions."  322 N.E.2d at 460.  In *Hofeld*, the insured was an Illinois

resident who received an insurance policy that was applied for and issued in Georgia.  *Id.*

at 457.  The Illinois Supreme Court found that Georgia choice of law was not contrary to

the public policy of Illinois, so the choice of law in the insurance contract was followed.

*Id.* at 460.  Another judge sitting in the Northern District of Illinois applied the same

analysis and reached a similar conclusion in *Mayoff v. Hartford Life and Acc. Ins. Co.*,

1990 WL 141422 (N.D. Ill. Sept. 21, 1990) (Holderman, J.).  In that case, a Rhode Island

choice of law provision was upheld because it did not violate Illinois' public policy. 1990

WL 141422, at *4.

In this case, however, unlike the cases cited above, Delaware law, which permits the inclusion of discretionary clauses in insurance policies, clearly is contrary to the Illinois Regulation at issue here and the public policy of Illinois. Accordingly, the Court concludes, based on the teaching of cases such as *Hofeld* and *Mayoff*, that the Delaware choice of law provision in the February 2010 Amended Policy should not be followed in this case to the extent it conflicts with the Illinois Regulation. For the reasons discussed above, the Court finds that the Illinois Regulation applies in this case and is not displaced by the fact that the stated place of delivery for the February 2010 Amended Policy is Delaware.

### C. The Illinois Regulation Is Not Preempted By ERISA

Finally, Hartford also argues that the Illinois Regulation, if it is applicable in this case and invalidates the discretionary clause in the February 2010 Amended Policy, nevertheless is preempted by ERISA. We disagree.

ERISA is a comprehensive federal statue that regulates employee welfare benefit plans. Because "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans," it "included expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan Inc.*, 451 U.S. 504, 523 (1981) (internal citations omitted)). Generally, ERISA supercedes any and all state statutes that "relate to any employee benefit plan...." 29 U.S.C. § 1144(a). State laws which "regulate[] insurance, banking, or

securities," however, may be saved from preemption by ERISA's savings clause.  29 U.S.C. § 1144(b)(2)(A).

Three federal Courts of Appeals have ruled that provisions comparable to the Illinois Regulation at issue in this case fall within ERISA's savings clause and are not preempted by ERISA. *See Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009); *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009); *Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141 (10th Cir. 2009). The issue also has been addressed by other judges within this District.  In *Haines v. Reliance Standard Life Ins.*, Judge Darrah ruled that "with no controlling authority to the contrary, the reasoning set out in *Ross* and *Morrison* is determined to be persuasive. Therefore, Section 2001.3 is not preempted by ERISA, and a *de novo* standard of review applies to this case."  Case No. 09 C 7648 (N.D. Ill. Sept. 9, 2009), [Dkt.#34], at 2-3.  Magistrate Judge Keys reached the same conclusion in *Ball v. Standard Life Ins. Co.*, 2011 WL 759952, at * 4-7 (N.D. Ill. Feb. 23, 2011).

Without any authority to the contrary in the Seventh Circuit, this Court agrees with the analyses in these decisions and concludes that the Illinois Regulation falls within ERISA's savings clause and is not preempted by ERISA.

## CONCLUSION

Accordingly, for all of the reasons discussed above, the Court concludes that the February 2010 Amended Policy was offered in Illinois to Children's Memorial Hospital as a Participating Employer under the Policy and as a Participating Member in the Trust. The Illinois Regulation is not displaced by the Delaware choice of law provision in the February 2010 Amended Policy nor is it preempted by ERISA. Therefore, the Illinois Regulation is applicable in this case, and it invalidates the grant of discretionary authority to Hartford contained in Children's Memorial Hospital's Long-Term Disability Plan. Accordingly, the Court's review of Hartford's decision to terminate plaintiff's disability benefits will be reviewed *de novo*, and the parties' discovery should be calibrated to discover information relevant to, or likely to lead to the discovery of evidence admissible for, that inquiry.

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, a party has 14 days to serve and file with the District Judge its objections, if any, to this Memorandum Opinion and Order, and "[a] party may not assign as error a defect in the order not timely objected to." FED. R. CIV. P. 72(a). If Hartford files any objections to this ruling, then the Court will defer setting a discovery timetable in this case. If, however, Hartford decides not to appeal, then the Court directs the parties to meet and confer for the purpose of developing a discovery timetable to be submitted to the Court.

This matter is set for a status on February 7, 2012 at 10:30 a.m. to set a discovery schedule. If Hartford has filed objections with the District Judge before that date, then

the status hearing will be stricken and re-set after the District Judge has ruled on those objections.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 18, 2012